Yes, Your Honor. May it please the Court, John Langsley for Safway, Appellant and Defendant. Your Honor, we've conferred with counsel, we've agreed on a protocol for the oral argument subject to the Court's approval, which is this. I'll argue for 20 minutes, reserving 3 for rebuttal. Continental Casualty and T.C. Harris Counsel will split their 20 minutes. I'll reply for 3, and then we've agreed that they could have a very short server rebuttal out of their 10 minutes, limited to the attorney fee issue, if that's okay with the Court. That's fine. Thank you. Your Honor, the Oregon legislature made a deal with Oregon employers. It was a very simple deal. If you get insurance to protect your workers for injuries, we will guarantee you that you will not be sued by your employee or a third party, including a third party, such as the general contractor, that might be sued by your employee, your injured employee, claiming that they were at fault, causing his injuries. In fact, the legislative history about this is very interesting. When the immunities provision was adopted, subsequent to that, the Oregon Supreme Court decided some cases saying, well, indemnity is an exception to the immunity provision. The Oregon legislature said, what? No. And they modified the immunity statute over a 656.018 to add this wording, that the Oregon legislature should not be sued for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions. Obviously, that's not true. I thought the claim here, though, was somewhat different. No, it's not different at all. Well, it's a failure to provide insurance that was required in the subcontract. Well, that's the – the claim is the failure to provide insurance. But the bottom line is, Your Honor … The bottom line is, Your Honor, the Oregon Supreme Court held that the anti-indemnity statute, ORS 30.140, bars claims for indemnity arising out of the fault of the indemnitor, the person being indemnified, and also bars claims for purchasing insurance to cover that. That's exactly what's going on here. And not only do we have the protection of the anti-indemnity statute, Your Honor, we have the protection of the immunity statute in the workman's compensation context. So what – what we were forced to do is to purchase insurance naming PCI and TCR as additional insurance. And what happens when that happens? The insurance company enters into a contract with its insured, the liability policy insurer, which provides that if you, the insured, i.e., PCI or TCR, get sued for your fault, not our fault, your fault, we will defend you. But they also – there were also allegations in the underlying claim that covered all parties. You know, that's where we get to the source of the mistake that was made here, which goes back to the Tudor case, Your Honor. Judge King, in his decision, incontinental casualty, said, well, all right, the indemnity provision in the contract is void. And that's right. And then he says, but I will look at the indemnity provision, even though it's void, and I will see that it only provides indemnity if Safeway is at fault. Well, of course, that can't happen if it's worker's comp. But he said, so since that's sort of comported with 3140, i.e., it's limited to Safeway's fault, I conclude, he wrote, that Safeway and PCI also intended obligation to purchase insurance to be limited to damage caused by Safeway's fault. That's not what this lawsuit was about. It's true that Bias sued us impermissibly, our employee, and his claim was thrown out. It was dismissed because, obviously, it violated the immunity statute. So the lawsuit that went to trial against PCI and TCR was for their fault, not our fault. And they're trying to force us to indemnify them because they were sued for their fault. That is an explicit violation of the wording in the immunity statute which says that this immunity includes claims for contribution or indemnity asserted by third persons from whom damages are sought on account of an injured employee. That's exactly our case. Now, where did this mistake originate? It originated with the Tudor case. We have a little cottage industry that has developed in the trial court here, starting with Tudor, then it went to Richardson, then it went to Continental Casualty, and we now have a brand-new case. And the mistake that is made is this. Well, it's possible, the trial judge has said in these various cases, that maybe the fault of the employer somehow contributed to the injury, and so therefore the additional insurance provision is enforceable. Well, a couple of things. Richardson, the trial court in Richardson wrote this, and it was construing an exclusion in the additional insurance policy. The Court wrote, Whether or not this exclusion applies will depend on whether Wright can prove, as a defense to Richardson's claims, Wright being the third party, as a defense to the employee's claims that the employer is liable, in whole or in part, for causing Richardson's injuries. That's an impossibility. It's a legal impossibility. How on earth can a defendant in a case brought by an employee prove that the complying employer is liable? It can't happen. And furthermore, how can our liability, or our insurance company's liability, be triggered by some third party alleging we were at fault in a case we're not a party in? It can't happen. And that same rationale infected the decision by Judge King in Continental Casualty, and it is now in a brand-new decision, which is not cited in our briefs, because we didn't know about it when we wrote the briefs. It's also from the trial court here in Portland, and it's Clarendon National v. American States. And the site, Your Honor, we just found out about this case when we shepherdized getting ready for this oral argument. It's 688 F. Supp. 2nd, 1186, and it was decided February 22, 2010. And again, Your Honor ---- Decided by whom? I'm sorry. Is the district court here? Yes. Which judge? Jones. So this is a problem not limited to Judge King. No. It appears to be the district court here generally has taken this position. Yes, it's ---- Is there any litigation in State court on the issue? No, except for the closest thing we have is the Walsh case, which, as the Court knows, was in a different context, the anti-indemnity statute. We don't have it. To my knowledge, we don't have anything in the Oregon Court of Appeals, the Oregon Supreme Court, on this. But we now have these cases with multiple trial judges making these decisions, and in this latest case, as with the others, the insurer for the general contractor sues the complying employer and its insurer on an additional insured endorsement. And the Court pointed out that there's not even an allegation in the case that the employer was at fault. I mean, why would the employee allege that? He's trying to get money from the general contractor. But the Court concluded with this. There was some evidence about the fault of the employer, and the Court concluded that evidence is insufficient to permit a ruling as to Woodmaster's, the employer's, liability to Stombaugh's, the employee, as a matter of law. A ruling plaintiff asked this Court to make. Because the issue of Woodmaster's, the employer, possible liability to the Stombaugh's, the employee, is a fact bound and not properly framed in the present motions, I reject plaintiff's request. How on earth are you going to determine the liability of an immune employer to an employee in a case that the employee brings against a third party? And another point, Your Honor, none of these cases that were decided in our crowd court construe -- here it is, ORS 30.160. They don't even mention it. Now, what's that statute? That statute is a statute that provides for allocation by a jury of comparative fault. Simple enough. You've got 100 percent. You have three defendants. You have a plaintiff. The jury allocates the percentages. But the statute then says there shall be no comparison of fault with any person who is immune from liability to the claimant. So the trial courts have set up a system here where we're going to decide whether we're at fault in a case we're not a party in, in a case we're immune in, and in which the jury can't make the decision. It's an impossibility. Now, does this, what you just referred to, the statute, it precludes an assignment of responsibility, a percentage or whatever, to the empty chair, to the employer who can't be sued because he's immune? You can't be out -- that's right. And you can't -- the jury cannot allocate fault to the complying employer. Now, it is true that the employer, the general contractor gets sued by the employee can argue that, gee, it wasn't my fault, it was somebody else's fault. Maybe the employer, maybe somebody else. I mean, he can argue that. He can put on evidences to that. Well, and they fill out the form, don't they? The percentages have to add up to 100 percent. That's right. But again, Your Honor, the jury cannot allocate fault to an immune party. So you can argue that all you want, but the jury's still got to divide up 100 percent amongst the people who are in the room. Absolutely. That's exactly correct. And we're not in the room. The big question that I've struggled with is, I mean, we all know what the bargain is for workers' comp. It gets complicated in a context where there are multiple parties, and the construction side is the epitome of that problem. And I guess the question becomes, okay, at what point does your client either have to take on or get to escape responsibility because of the multi-party context of a construction site? To sue the general contractor, the employee, your employee, has to allege negligence on the part of the general contractor. Absolutely. But it's real easy to allege anything. In this case, in fact, he didn't succeed in establishing negligence on the part of anybody else, which is why this is a case that has a feel that's a little harder for you, even though that's irrelevant in terms of what should trigger the insurance coverage. Why is it that we should take the workers' comp deal and apply that in such a way as to prevent the employer from being held accountable by other parties who say, look, if I'm going to sub you, you're going to have to take responsibility for everything involving you. I don't want to be sued by your employees who are unhappy, who get hurt because they're working for you and so forth. So you're going to deal with me. I'm not taking responsibility. I'm not going to take the fall for what your people come in with. Why can't that be just a separate deal, separate and apart from, made by the contracting parties, separate and apart from the deal made by workers' comp? Because, Your Honor, it violates immunity provision. Because it's specific. Remember, the indemnity provision, the Oregon Supreme Court said, oh, that's okay, that's not, it does violate the immunity. The legislature came in and reversed those cases, in effect, and said that you are immune, including claims by the general contractor, as an example, for indemnity from you or contribution or whatever arising out of an injury to your employee. Now, it's a bright line. It's a – the fabric of immunity in Oregon has been torn apart by these Federal Court decisions, I suggest. But it's a very simple proposition. The fabric is this. If you're a complying employer, you're immune. If your employee goes out and sues other people in the context of construction, you know, it's not our, it's not our decision. What do you mean by compliant employer? An employer that buys workers' compensation insurance. Has insurance. Okay. It's that simple. That's the deal. Now, another astonishing thing in Judge King's decision, which sort of illustrates how we got off the track here with these cases, is that – give me a second here. Well, he says in his decision that this is commonplace in construction to have subcontractors agree to protect the general contractor on account of vicarious liability. What? This is not a vicarious liability case. PCI and TCR weren't sued because they're vicariously liable for our fault. And so there's a complete misapprehension about what's going on here. It's a direct negligence claim brought by the employee against TCR and PCI. It's not a vicarious liability claim. How can there be a vicarious liability claim? Well, the term – you're right. The term vicarious liability means something a little different. But I think what I understood the reference to be is really what I was referring to earlier. You've got a context where you have multiple parties on the same site. The allegation of negligence by anyone is easy to make. And why can't the parties contract to say, look, you're responsible for your folks. We're not responsible for your folks. You take the lead in making sure that whatever comes out, you deal with it. Well, to answer the question, Your Honor, everybody can buy insurance. PCI and TCR had insurance. They had an insurer that defended them. We have insurance. The immunity provision means that everybody get insurance and we're not going to transfer the risk of employee injuries away from a complying employer back to the complying employer. We're not going to boomerang it. And that's what these decisions are doing. And what happens, Your Honor, as a matter of reality, is the general contractor comes to a sub. We're a pretty big company, but maybe a small guy. And he gives them a 10-page contract that says, now, you want the business? You want the work? Sign here. And what does the subcontractor do? He signs there. Why? Because he wants the business. His employee gets hurt. Who knows why? He's a complying employer. He provides workers comps so that that injured worker is taken care of, if necessary, for the rest of his life, and now he gets sued by the general contractor, who will always, in every case, they will claim that it was my fault to trigger my additional insured coverage. And it respectfully needs to stop, Your Honor. Now, another thing I want to point out in this case is, look who the plaintiff  is. It's an insurance company. It's Continental Casualty Insurance Company. They were paid a premium to do exactly what they did. They defended PCI and TCR, and they defended them successfully. They got a defense ticket. Usually, these tragic battles between insurance companies, but the reason you're not Zurich American is because of the self-insured retention. Well, that's, of course, true. But still, Your Honor, my point is this. They're not damaged. Continental Casualty did what it was paid to do. Number two, PCI is not damaged. It got defended, and it won. TCR is not damaged. It got defended at Continental Casualty's expense, and it won. So who's damaged here? The complying employer. He wanted to save some time for them. Oh, yes, Your Honor. Three minutes. Thank you. May it please the Court. We're here actually today on cross appeals and two separate fee appeals, and I'm Aaron Denton for Continental Casualty. For time's sake, I'm going to respond to Mr. Langslist's arguments on behalf of both Continental and Tremel Crow, and then I'll yield to Mr. Armstrong here. And Mr. Armstrong is here for? TCR. TCR request. I'll get my question. I cast a case. Tremel Crow. Okay. Thank you. I'm sorry. You're going to argue the cross appeal now? Actually, I'm going to open by responding to Mr. Langslist's arguments and Safeway's appeal. Safeway suggests that the district court has run amok and has ripped asunder the fabric of Oregon law because they failed to recognize the legislatively imposed bargain that the workers' comp bar sets. In reality, the amendments that Mr. Langslist referred to occurred in 1977. Thirteen years later in 1990, the Oregon Court of Appeals in Montgomery Elevator said, yes, there is a distinction between liability imposed for compensable injuries under the comp bar and liability imposed for breach of an insurance contract or breach of a contractual promise to procure insurance. And the court highlighted that distinction by saying, look, in this case, if Performance Contracting Inc. figures out that Safeway has failed to procure the insurance it promised to provide, Performance Contracting could have brought an action for specific performance and required Safeway to procure that insurance. The damages that Judge King and the district court awarded against Safeway in this case are damages because Safeway breached its contract to procure insurance. And I think it bears noting the facts surrounding that breach of contract. Safeway is a sophisticated construction entity. They enter into contracts all over the country. They agreed to procure insurance, a million dollars of primary insurance covering both Performance Contracting and Trammell Crowe. And then instead of just failing to get this insurance, they provided Performance Contracting and Trammell Crowe with a certificate that says, here's your coverage. I've added you to my policy with Zurich. Oh, by the way, and this disclosure didn't occur, that policy is subject to a self-insured retention. So Safeway provided none of the insurance it contracted to provide, and Safeway's performance of its contractual promise to procure insurance was disdained. Yeah. Here's one issue I'm struggling with on your view. What is the difference between a self-insured retention and just an ordinary deductible? I think a deductible is something that an insurer will impose based upon the kind of damages the insured is seeking. A self-insured retention was, in this case, Safeway went to Zurich and say, I want to pay a smaller insurance premium. It's common in almost all kinds of insurance to have a deductible, right? That's true. I don't think it's common to have a million-dollar self-insured retention. Well, what's the difference between the two in theory, in concept? For our purposes, the difference is that Safeway promised to provide primary insurance, and they didn't disclose the fact that they said we'll provide insurance to you, Performance Contracting, from dollar one. So what's the breach? A failure to disclose? Well, the breach is that they provided no insurance at all. If I – whether I call it a deductible. No, they provided insurance with a retention. So you still haven't answered my question. What's the difference between a deductible and a retention? Your Honor, I think it's – Is it the same thing? I think it's semantics. I think if I agreed to provide insurance covering you from dollar one to a million dollars and my policy says it has either a self-insured retention – Well, suppose I had a $100,000 deductible on that same insurance. It would be okay, right? Well, those aren't the facts of this case. Would that be okay in your eyes? It would be a breach of contract? I think so. I think $100,000 is significant enough that if you didn't disclose that, it would be a breach of contract. It depends on size? Size of the retention? Is that what it depends on? Well, that may be, Your Honor, but here we're talking about a 100 percent failure. There's nothing in the contract that – Excuse me? There's nothing in your contract that prohibits either a retention or a deductible,  I safely raise that argument in its briefs, and frankly, I struggle with it. If I say I'm going to provide you a million dollars of insurance coverage, but I provide you no coverage because I either have a deductible, a million dollar deductible, or a million dollar self-insured retention, have I done what I promised to do? I submit that I did not. Whether you call it a deductible or a self-insured retention, if it completely eviscerates the insurance protection I've contracted to provide you, I've failed, and I've breached my contract. In effect, you want to take the self-insured and replace that with the Safeway. So Safeway becomes the insurer for the first million dollars, but that means Safeway is responsible for the first million dollars encountered by your client as well. Well, that was the subject of our cross-appeal, and I'll get to that in a minute. I just think it's important to note that the Montgomery Elevator distinguished between agreements to procure insurance and indemnity agreements, and no subsequent decision of the Oregon's appellate courts has called Montgomery Elevator into question. Safeway has raised arguments about the Walsh decision. They're disingenuous. In that case, the party stipulated that the general contractor, the party that was seeking indemnification,  noted, look, our analysis is limited to subsection 1 of ORS 30.140. It didn't reach subsection 2. Clearly, some agreements to procure insurance are permissible under Oregon law. It's also not true that the Walsh did say our analysis applies to agreements to procure insurance as well as agreements to indemnify, but it nevertheless remains true that agreements to procure insurance for the indemnant towards negligence are permissible. I think it's instructive to look at the facts of this case. Safeway employee, Johnny Bias, plaintiff in the underlying action, was working alongside Safeway's competent person, and he fell from scaffolding because he wasn't roped in. PCI and TCR, performance contracting and TCR, they can't have an employee on every scaffolding platform on this massive job project to make sure that Safeway's employees are roped in, especially when Safeway's competent person is standing right there. The fault for Johnny Bias' injuries rests solely with Safeway. OSHA issued Safeway a citation. Safeway paid a fine. The Multnomah County jury returned defense verdicts on behalf of both performance contracting and Trammell Crowe. So I think it's clear that the Safeway's promise to procure insurance doesn't violate the worker's comp bar. It's a separate arrangement between contracting parties at a job site. It doesn't violate ORS 30.140 because Oregon law permits one party in a construction agreement to indemnify another to the extent of the indemnitory's negligence, and that's all that Safeway did here. Because we're running short on time, I'd like to transition to Continental's cross appeal, which says, as Your Honor pointed out, I think that there are cases across the country that say if you make a business decision to retain per claim liability, a million dollars in this case, then you have to step up to the plate as an insurance company to the extent of that retained liability. And in our brief, we discuss cases across the country that recognize this. Oregon has no case precisely on point, but they have in the Haines v. Tri-County Metro case. They present a strong indication of how Oregon Supreme Court would rule on this. In that case, the Oregon Supreme Court held that TriMet, a local municipal transport corporation, could be an insurer even though it doesn't engage in the business of entering into insurance policies, and that it could be subject to an attorney fee claim under ORS 742.061. The TriMet was not a self-insured retention. They just were self-insured, right? They were self-insured. I think that that's, again, this case is not precisely on point. It just illustrates the general idea behind this, which is, look, if you decide to hang on to a million dollars of per claim liability, if you decide to self-insure, we can treat you as an insurance company. The cases across the country deal with other insurance clauses. In our case, we're just saying, safe way, you hit the ball, you retain a million dollars of per claim liability, you promised to provide us a million dollars worth of coverage, we're going to treat you like an insurance company. And I'd like to yield at this point to give Mr. Armstrong a chance to speak. If there are any questions. May it please the Court, Brian Armstrong for Appellant TCR. Both TCR and Continental have raised separate attorneys' fees appeals. I want to address both of those, if I may, because they basically raise the same two fundamental issues. My understanding is I'm going to have about six minutes to do this. So after about six minutes, I will sign off to reserve time for co-counsel to get rebuttal. Unless the Court directs otherwise, I'd like to first talk about the contractual obligation of Safeway to pay attorneys' fees in this case, and then move on to Safeway's obligation under Oregon common law, if time allows me to do so. As reflected in the record, Safeway agreed to be bound by the attorney's fees provision of the TCR-PCI prime contract. TCR included a prevailing party attorney's fees provision in its contract with PCI, which was essentially its general contractor. The contract included a specific requirement that any subcontractor hired by PCI agree to be bound by the terms of the prime contract between TCR and PCI. Safeway's contract with PCI incorporated the entire TCR-PCI contract by reference. It also included a very broad flow-down provision in which Safeway, one, acknowledged that it had examined and understood the terms of the TCR-PCI contract, and, two, it promised that it agreed to assume all the duties and obligations of PCI in the contract with TCR, whether they related directly or indirectly to the work on the project. So it has to relate to work on the project. Directly or indirectly, Your Honor. And I think the error in the trial court's analysis here is that it fails to give effect to the directly or indirectly language. Certainly, the agreement to procure insurance for the benefit of PCI and TCR relates at least indirectly to Safeway's work on the project. It was a contractual obligation of Safeway, just like the terms of its performance of the scaffold erection and whatever else it did on the project. So certainly it relates indirectly, but I would submit it relates directly as well. These two provisions, the incorporation by reference and the flow-down provision, both collectively and individually bind Safeway to an attorney's fees obligation in this case. Under order to ---- Obligation covering what? I have to apologize here. There's so many pieces floating around, I want to make sure I'm focusing on the right piece. What is it you say ought to have been picked up by this provision that wasn't picked up? That's a good question, Your Honor. What should have been picked up in this circumstance were the fees that TCR incurred by litigating with Zurich, litigating with Continental in the trial court that were not paid. But if Safeway has a contractual obligation, a prevailing party attorney's fees obligation, then Safeway would be liable also for the fees that TCR and Continental incurred in litigating against Safeway in the district court to enforce its contractual obligation. Okay. The claims in the Safeway litigation, you argue, are picked up by the contractual prevailing parties. It's a pretty common contractual provision. What's the source of the attorney fee award that you say should cover the costs in litigating against Zurich, for example? Thank you, Your Honor. That's the Oregon common law rule that says that if a party breaches its contract and forces a non-breaching party to be involved in litigation with third parties, you can recover your attorney's fees in litigating against those third parties because of the breach. As part of the damages? As part of the damages, Your Honor. That's essentially true. It is considered a consequential damage of the breach of contract. But I would submit to the Court that in this case, though, those fees also represent attorney's fees incurred in the district court action. Remember that TCR did not institute this lawsuit. We were brought into this lawsuit and we were forced to defend it, and everyone asserted claims and counterclaims and crossed claims against each other to determine the respective rights and liabilities of the parties. At that point in the litigation, it's really not feasible for TCR to know who is going to be contractually obligated to pay fees, who is going to be obligated to pay fees under Oregon common law, until judgments on liability are determined by the district court. And, in fact, Judge King's order on the summary judgment motions, I think, in which he said quite explicitly that any claims for attorney's fees on any other basis other than the statutory basis under Oregon law to seek fees against an insurance company shall be brought after the entry of judgment. That's what TCR and Continental did in this case, and we submit that it was error for the trial court to reason that the timing of our fee request was, quote, unquote, too late at that point. If I may, going back to the flow-down provision just quickly, contrary to Safeway's interpretation and the district court's interpretation of the flow-down provision, nothing in it limits Safeway's contractual assumption of its obligations to the mechanical performance of its scaffold, erection, and dismantlement on this project. It simply doesn't say that. It says that Safeway agrees to assume all duties and obligations that PCI agree to with respect to TCR insofar as they relate directly or indirectly to the work. We've cited a number of cases from appellate courts that hold that similar contract language binds the subcontractor to the general terms of the upper-tier contract, even where the flow-down provision includes language that restricts those obligations to the work to be performed. That same analysis should be applied here. The incorporation by reference and flow-down provisions mean that Safeway assumed the correlated position of PCI with respect to its obligations. That is, to the same extent, just as TCR would be able to seek its attorney's fees from PCI if they were engaged in a contract dispute, TCR would also be allowed to seek and recover its fees from Safeway if Safeway's breach of the downstream contract injured TCR, which is what happened in this case. That's the purpose of these provisions. That's exactly what they're designed to do, to ensure consistency across a number of tiers of subcontractors. Remember, in this case, TCR hires PCI to basically frame the building and apply stucco. It doesn't know whether and to what extent PCI will hire subcontractors, specialty subcontractors like Safeway, to do additional work. And because of that risk, it required PCI to have any of its subcontractors agree to be bound by the upstream provisions of the contract, and it included a very standard flow-down and incorporation by reference provision in its contract. And we submit that the cases that we have discussed apply this same analysis to very similar language. Okay. Your time is running out. Okay. I will rest at this point. According to your agreed-upon. I will rest, but thank you. Unless the Court has any other questions, I'll rest. Thank you. A few comments, Your Honor. I was very interested in Sir Denton's comments, because it surfaces. He says, well, it was Safeway's fault. Your Honor, that's not a relevant issue or consideration at all, because workers are hurt on the job. Sometimes it's their fault. Sometimes it's the employer's fault. But the immunity covers both circumstances. From their perspective, the employee of Safeway is Safeway. A third party views you as being responsible for your employees. The bargain for workers' comp between employer and employee, in the perspective of the outsiders, ought to be limited to those two parties. I understand your argument. I mean, Oregon can set up any way it wants to. Once everybody understands the rules, then you ensure appropriately. So what I'm struggling with is trying to figure out what it is that tells us that Oregon has set it up in the way that you've advocated. We principally heard about Montgomery Elevator as what we should look to to suggest that Oregon hasn't set it up in the way that you've advocated. What's your response to Montgomery Elevator? Well, first, Your Honor, Montgomery Elevator is distinguishable for this reason. It was a case brought by the contracting party itself, not an insurance company. And Montgomery Elevator settled with an injured employee, paid money, and then sued to get it back. So it's distinguishable for that reason. But secondly, it's a court of appeals decision. There was a very strong dissent by Justice Graber. Two or three justices joined with her. Graber? Graber? Yes, the Graber on the Ninth Circuit, Your Honor. Very strong dissent. You should read it. And one of her comments was, it doesn't matter if it's a penny or a peppercorn, the immunity should protect the employee-er. But, Your Honor, the way it's set up, it's not limited to the employee and employee in Oregon. Because, again, the legislature reversed those Supreme Court cases and said it applies to third parties who get sued by the employee. So the immunity is overarching. And what we've done here is to rip it apart. They talk about subsection 2 of OS 30.140. And they talk about, well, it's just, it has to be Safeway's fault. This case didn't go to a jury on our fault. It went to the jury on their fault. And we had absolutely no legal obligation to provide insurance to protect them from their fault. None. Zero. We have no duty to indemnify. And I want to mention the case that was in the court of appeal, in our reply brief, California Appellate Court Case Patent Scaffolding. Very similar facts. Subrogation action by an insurance company who paid a loss. Courts had no subrogation because the insurer didn't suffer a loss. Same situation here. The loss was not caused by the fire, the loss, or by the breach of contract. The loss was caused by a fire, an assured loss. And here they paid because their client got sued. And third, to recover, to permit subrogation, we give the insurance company a windfall. And if Continental wins, they get a windfall. And beyond that, it's not enough they're trying to circumvent the workers' compensation statute to try to convert us into an insurance company. Do you want to say anything about the insurance case? Yes, Your Honor, I do. Briefly? Very, very briefly. We're not an insurance company. Well, why aren't you? If you've got a million dollars self-insured retention, why aren't you, in effect, an insurer for the first million dollars? For this – well, for many reasons. SIRs are very common. They're all over the place. Sometimes they're not. It was self-insurance, but TriMet got held liable as an insurer because it was self-insured. But the insurance code defines an insurance company, Your Honor, as someone in the business of selling policies of insurance. How is your position different from TriMet? Well, it's completely different because TriMet decided to be an insurer, in effect. We're not an insurer. Well, you know, they were self-insured and you're self-insured up to a million. Isn't that the same thing? No, Your Honor, because they – What's the difference? The difference is we don't sell policies of insurance. And neither does TriMet. But they assumed obligations of an insurer that were required under the Oregon statute for, I think it was uninsured motorists. They complied with the statutory scheme. They complied with the statutory scheme. Thank you. And you complied with your contractual obligation. Pardon me, Your Honor? I said, and you complied with your contractual obligation by the $1 million retention. Well, that's our position. We did comply, absolutely. So I still don't see how you're different from TriMet. Well, because it was – as Your Honor pointed out, that was the context in which the insurance was mandated by statute and TriMet stood in and said, okay, I'm going to provide that insurance myself. So I think it is a different situation. It is argued that the insurance, the first million dollars, is required by contract. Your contract with the general contractor didn't say, we'll insure above a million dollars. It said, we'll provide insurance. You elected to do that with a policy that had a self-insured retention for the first million. I don't see the substantive difference between this and the TriMet situation. And maybe I'm not trying to say the same thing, but I'm not sure I understand the distinction you're trying to offer up. Well, I think there is a distinction. And again, Your Honor, to repeat myself, it's got to comply with the insurance code. We don't. We don't sell policies of insurance. We're not an insurance company. And 742.061 is limited to insurers. What's your response to the argument about the contractual, the downflow contractual provision? Well, we reject that. We don't agree with that argument at all, Your Honor, because we're not a party to that contract that had the attorney fee provision, and the flow down didn't incorporate administrative provisions like the attorney fee provision. It was limited to our work on the project. So we don't think it applies. It's related to the work directly or indirectly. That's correct. Isn't this indirectly related to your work? No. It's an attorney fee. It's an attorney fee provision, Your Honor. All right. It insures the work. No. It insures them in the event they get sued by our insurance employee. All right. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you. Actually, he has just a few minutes to reply to the attorney fee, Your Honor. Actually, please, the Court, I'd like to speak briefly and reply on Continental's cross appeal that safely should be deemed an insurer per our agreement with counsel. Thank you. And, again, briefly, the difference between an SIR, a self-insured reduction or retention, rather, and a deductible is that the presence of a deductible doesn't preclude an insurer's obligation from kicking in. If I have a $200 deductible and I'm sued, the insurer still has to jump in and defend me regardless of the deductible. Under the self-insured retention, the insurer's obligations aren't triggered until the SIR is exhausted. Another reason why we think Safeway should pay attorney's fees as an insurer in this case is because that's part of the benefit of the bargain. Their contract was to procure insurance if they had done so, if they had paid the premiums, if Zurich's policy kicked in at $1 and Zurich didn't defend performance contracting and performance contracting had to sue Zurich, they'd get their fees. They should get the same benefit of the contractual bargain in this case. Safeway also knew what it was doing. During discovery, we'd opposed Safeway's director of risk management. She says, yeah, we know what this SIR is, and we pay for the defense of third parties under the SIR. Why they chose not to do it in this case, I can only speculate. And finally, the Oregon Insurance Code defines insurance, insurers as including companies that enter into the business of issuing insurance policies. It's not an exclusive definition, hence the TriMet decision. There's no Oregon case that's directly on point, is there? That's correct, Your Honor. Thank you. Okay. Yeah, we have one more. Just very briefly, the district court's analysis of the flow-down provision in this case effectively writes it out of the contract. It gives it no meaning. Indeed, the only rights TCR would ever seek to enforce against Safeway would be those that related directly or indirectly to its work on the project, which in this case would be its agreement to procure insurance to protect TCR in unfortunate circumstances like those that happened. On the Oregon common law basis, we know from the Hogue v. Westland case cited in our materials that the attorney's fees that are recoverable under that common law theory can include the attorney's fees that incurred in the action to establish the breach of contract itself. That being the case, under Federal Rule 54 and under Oregon District Court Local Rule 54, parties are to bring attorney's fees motions following the entry of judgment, both whether they're challenging their entitlement to fees or trying to establish the reasonable amount of those fees, and that's exactly what we did in compliance with Judge King's order. We ask that the Court reverse on that basis and award fees. Thank you for your time. Thank you. We appreciate all of your arguments in this rather complicated dispute. The matter is submitted. And that ends our session for today. Okay. Thank you.
judges: Tashima, Paez, Clifton